UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                    :
IN RE:                                              :
                                                    :
KEURIG GREEN MOUNTAIN SINGLE-                       :
SERVE COFFEE ANTITRUST                              :          14-MD-2542 (VSB)
LITIGATION                                          :          14-MC-2542 (VSB)
                                                    :
*This order relates to all cases*                   :          **OPINION & ORDER**
                                                    :
---------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

      This Opinion & Order addresses 12 motions to seal or redact materials.  The parties, as well as various non-parties, have made numerous requests seeking either the wholesale sealing of dozens of documents or detailed line-item redactions covering thousands of pages of material. This Opinion & Order covers an initial tranche of such requests.

      I assume familiarity with the background of this multidistrict litigation, which focuses on antitrust claims brought against Keurig Green Mountain, Inc. ("Keurig"), and which is discussed in more detail in my Opinion & Order of April 3, 2019.  (Doc. 581.)  Where additional background is necessary, I address it in the context of the specific motion to seal or redact.

## I.    Legal Standard

      "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action."  *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).  When a party requests sealing, the court must evaluate that request under both a "common law right of public access to judicial documents," *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006), and the press and public's "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents."  *Id.* at

120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir.2004)).

### A. The Common Law Right of Access

I begin with the standard for the common law right of access.  This is an appropriate

starting point because the test for whether a document can be sealed under the First Amendment

is more stringent then under the common law.  *Lugosch*, 435 F.3d at 124.  If a sealing request

cannot survive the common law test, it will not survive scrutiny under the First Amendment test.

A "common law right of public access to judicial documents is firmly rooted in our

nation's history." *Lugosch*, 435 F.3d at 119.  Thus, a presumption of public access rooted in this

common law attaches to materials classified as judicial documents.  *Amodeo I*, 44 F.3d at 146.

This right of access is essential to maintaining judicial accountability.

> The presumption of access is based on the need for federal courts, although
> independent—indeed, particularly because they are independent—to have a
> measure of accountability and for the public to have confidence in the
> administration of justice.  Federal courts exercise powers under Article III that
> impact upon virtually all citizens, but judges, once nominated and confirmed, serve
> for life unless impeached through a process that is politically and practically
> inconvenient to invoke.  Although courts have a number of internal checks, such as
> appellate review by multi-judge tribunals, professional and public monitoring is an
> essential feature of democratic control. Monitoring both provides judges with
> critical views of their work and deters arbitrary judicial behavior.  Without
> monitoring, moreover, the public could have no confidence in the
> conscientiousness, reasonableness, or honesty of judicial proceedings.  Such
> monitoring is not possible without access to testimony and documents that are used
> in the performance of Article III functions.

*Amodeo II*, 71 F.3d at 1048.  Accordingly, "[i]t is not, and should not be, an easy matter to deny

the public access to documents that are utilized in judicial proceedings and form part of the basis

of judicial decision-making, since the public is ordinarily entitled to review such material in

order to understand and evaluate the actions of the courts." *Newsday LLC v. Cnty. of Nassau*,

730 F.3d 156, 167 n.15 (2d Cir. 2013).

Courts evaluate the common law right of access with a three-step process.  The court first

determines if the document to be sealed is a "judicial document." *Lugosch*, 435 F.3d at 119.  "In order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (*Amodeo I*)).  Accordingly, "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document." *Amodeo I*, 44 F.3d at 145.  Similarly, "[d]ocuments that play no role in the performance of Article III functions, such as those passed between the parties in discovery" are not judicial documents. *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (*Amodeo II*).  Documents that seek no relief from the court are also not judicial documents.  *See, e.g.*, *In re New York City Policing During Summer 2020 Demonstrations*, No. 20CIV8924CMGWG, 2022 WL 7886182, at *2 (S.D.N.Y. Oct. 14, 2022).

Conversely, "documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents." *Lugosch*, 435 F.3d at 121. "Filings related to *Daubert* motions are [also] judicial documents subject to a significant presumption of access under the common law and the First Amendment." *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & Versys Femoral Head Prod. Liab. Litig.*, No. 18-MC-2859 (PAC), 2021 WL 4706199, at *2 (S.D.N.Y. Oct. 8, 2021) ("*Zimmer*"); *see also Republic of Turkey v. Christie's Inc.*, 425 F. Supp. 3d 204, 221 (S.D.N.Y. 2019) (collecting cases).  Motions for class certification are judicial documents as well.  *See, e.g.*, *Tropical Sails Corp. v. Yext, Inc.*, No. 14 CIV. 7582, 2016 WL 1451548, at *3 (S.D.N.Y. Apr. 12, 2016); *Mark v. Gawker Media LLC*, No. 13-CV-4347 (AJN), 2015 WL 7288641, at *2 (S.D.N.Y. Nov. 16, 2015).

If a court determines that the documents at issue are judicial documents to which the

presumption of access applies, then in the second step "it must determine the weight of that presumption." *Lugosch*, 435 F.3d at 119.  The "presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo II*, 71 F.3d at 1049.  This information, and by extension the strength of the presumption "fall[s] somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.*

Summary judgment motions and papers filed in support of these motions enjoy "a strong presumption of access." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016); *see also Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("[D]ocuments used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons.")  This presumption exists regardless of the role the specific document plays in a court's adjudication of a motion.  *Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019) ("We have expressly rejected the proposition that 'different types of documents might receive different weights of presumption based on the extent to which they were relied upon in resolving a motion for summary judgment.'" (quoting *Lugosch*, 435 F.3d at 123 (cleaned up)).

A significant presumption of access also exists for filings related to *Daubert* motions. *Zimmer*, 2021 WL 4706199, at *2 ("Filings related to Daubert motions are judicial documents subject to a significant presumption of access under the common law and the First Amendment.")  As with motions for summary judgment, this presumption extends to all materials associated with *Daubert* motions.  *See, e.g.*, *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20 CIV. 10832 (AT), 2022 WL 17751466, at *3 (S.D.N.Y. Dec. 19, 2022) (noting that supporting "financial documents [which] may assist the Court when resolving the pending

*Daubert* Motions . . . are subject to a substantial presumption of public access"); *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis With Kinectiv Tech. & Versys Femoral Head Prod. Liab. Litig.*, No. 18-MC-2859 (PAC), 2021 WL 2258292, at *2 (S.D.N.Y. June 3, 2021) ("Exhibits . . . submitted in connection with Plaintiffs' *Daubert* motion, are judicial documents subject to a significant presumption of public access.")

However, the presumption of access has only "modest" weight where the document is submitted in connection with discovery motions, motions to compel testimony, and motions to exclude certain deposition testimony. *In re New York City Policing During Summer 2020 Demonstrations*, 2022 WL 7886182, at *2 (citing *Brown*, 929 F.3d at 50).

In the third step, "after determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" *Lugosch*, 435 F.3d at 120 (quoting *Amodeo II*, 71 F.3d at 1049). Courts have identified several countervailing considerations that may overcome even strong presumptions of public access. The most relevant to this case is the possibility of competitive harm to an enterprise if confidential business information is disclosed. "The need to protect sensitive commercial information from disclosure to competitors seeking an advantage may" be an interest meriting sealing. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2014 WL 12772236, at *2 (S.D.N.Y. Nov. 5, 2014); *see also Standard Inv. Chartered, Inc. v. Fin. Indus. Regul. Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009) (upholding a district court's finding that a business's "interest in protecting confidential business information outweighs [even] the qualified First Amendment presumption of public access"); *Rowe v. Google LLC*, No. 19 CIV. 8655 (LGS), 2022 WL 4467628, at *2 (S.D.N.Y. Sept. 26, 2022) ("Preventing competitive harm is a countervailing interest that can override the public right of access."). Thus, courts in this District have permitted the redaction

of confidential information such as sales and pricing data on the grounds that its disclosure would work a competitive harm on the disclosing enterprise.  *See, e.g.*, *In the Matter of the Ex Parte Application of the Upper Brook Companies for an Order Directing Discovery In Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, No. 22-MC-97 (PKC), 2023 WL 172003, at*6 ("*Upper Brook*") ("A presumption of access may be outweighed by a party's interest in 'protecting confidential business information' from disclosure that would subject it to 'financial harm' or a 'significant competitive advantage.'") (quoting *Standard Inv. Chartered, Inc.*, 347 F. App'x at 617); *W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.*, No. 1:21-CV-11003-LTS, 2022 WL 890184, at *3 (S.D.N.Y. Mar. 25, 2022) (granting a sealing request where "disclosure of this confidential business information would subject [movant] to a competitive disadvantage"); *Valassis Commc'ns, Inc. v. News Corp.*, No. 17-CV-7378 (PKC), 2020 WL 2190708, at *3 (S.D.N.Y. May 5, 2020) ("The demonstration of a valid need to protect the confidentiality of sensitive business information, such as pricing and compensation information, may be a legitimate basis to rebut the public's presumption of access to judicial documents").

Other courts, however, have been skeptical of sealing information that is commercially sensitive, particularly where it is highly relevant to the dispute and by extension, to the public's understanding of the court's decision.  In *Ferring Pharmacueticals Inc. v. Serenity Phramauticals, LLC*, for example, Judge McMahon refused to permit the redaction of purportedly sensitive commercial information for a wide range of documents.  No. 17CIV9922CMSDA, 2020 WL 949423 (S.D.N.Y. Feb. 27, 2020).  The collective effect of these redactions would have been to force the court to "mak[e] 'secret' findings of fact" and "award secret damages," *id.* at *1–2, which Judge McMahon declined to do.

A further countervailing consideration is "the privacy interests of innocent third parties"

which "should weigh heavily in a court's balancing equation." *Application of Newsday, Inc.*, 895 F.2d 74, 79–80 (2d Cir. 1990) (cleaned up). These privacy interests are "a venerable common law exception to the presumption of access." *Amodeo II*, 71 F.3d at 1051. However, not all third-party interests have equal weight. As *Olson v. Major League Baseball*, noted, an entity's "third-party status should be placed in context." 29 F.4th 59, 91 (2d Cir. 2022). In *Olson*, for example, the third-party privacy interests of the Yankees were lessened because of the nature of their association with the named defendant, which had the right to investigate the team. Accordingly, while the Yankees had a privacy interest, it was not comparable to that of a third party with no association with a named defendant. *Id.*

Several factors can diminish the weight of these countervailing considerations. First, if a court is to give weight to a party's asserted harms, those harms must be concretely and specifically described. "[B]road allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *Coventry Cap. US LLC v. EEA Life Settlements, Inc.,* No. 17CIV7417VMHBP, 2017 WL 5125544, at *3 (S.D.N.Y. Nov. 2, 2017) (quoting *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009)); *see also In re Google Digital Advert. Antitrust Litig.*, No. 21-CV-6841 (PKC), 2021 WL 4848758, at *3 (S.D.N.Y. Oct. 15, 2021) (declining to seal material where the "harms . . . are vaguely described[,] . . . rather conclusory . . . [and] do not identify privacy interests or concrete harms that outweigh the presumption of public access."); *In re SunEdison, Inc. Sec. Litig.*, No. 16-CV-7917 (PKC), 2019 WL 126069, at *1 (S.D.N.Y. Jan. 7, 2019) (questioning the appropriateness of sealing where a party "cite[s] generally to 'commercially sensitive, non-public information' without explaining why specific documents or information are sensitive or risk harm to any person or entity.")

Second, the older the information is, the less appropriate it is to seal that information,

7

particularly when the party does not explain with specificity why, despite the passage of time, the information should still be sealed.  *Compare Upper Brook*, 2023 WL 172003, at*6 (S.D.N.Y. Jan. 12, 2023) (denying sealing where movant failed "to show that the information is not 'stale'" or "why disclosure would still cause harm"); *In re Parmalat Sec. Litig.*, 258 F.R.D. at 250–56 (finding a diminished interest in sealing where the relevant documents were seven to fourteen years old and movant failed to explain their continued sensitivity); *Dawson v. Merck & Co.*, No. 112CV1876BMCPK, 2021 WL 242148, at *8 (E.D.N.Y. Jan. 24, 2021) ("Stale business records cannot support the necessary finding of harm"), *with City of Providence v. BATS Glob. Markets, Inc.*, No. 14-CV-2811 (JMF), 2022 WL 539438, at *3 (S.D.N.Y. Feb. 23, 2022) ("Although the document is several years old, the third-party privacy interest of Nasdaq's customer in preventing disclosure of this sensitive information regarding its trading and business strategies is significant."); *Encyclopedia Brown Prods., Ltd. v. Home Box Off., Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) (finding that decade-old information should still be sealed where movant had credibly explained why the information would still create competitive harm).

The older the information contained in documents, the more detailed the supporting material should be submitted to support the sealing of the documents.  In *Home Box Off., Inc.*, for example, sealing requests for decade-old information were supported with sworn statements demonstrating that the older agreements were still in force or that the business practices reflected in those agreements were still in effect.  *Id.* at 613.  I have specifically drawn the parties' attention to this factor, and asked them to consider sealing requests in the context of "where we currently stand in the case, as opposed to where it stood when the case was initially filed" because "there may be certain things that time has overtaken and they're no longer sensitive, either from the companies' perspective or otherwise."  Transcript of Hearing Held Apr. 5, 2019,

7:4–9.[1]

Third, and finally, the existence of a protective order covering a document is not, in and of itself, sufficient grounds to seal or redact that document.  "[T]hat a document was produced in discovery pursuant to a protective order has no bearing on the presumption of access that attaches when it becomes a judicial document."  *Doe v. U.S. Immigr. & Customs Enf't*, No. 19-CV-8892 (AJN), 2021 WL 3862708, at *3 (S.D.N.Y. Aug. 30, 2021); *see also Newsday LLC*, 730 F.3d at 166 ("[T]he facts necessary to show good cause for a protective order applicable to discovery documents that are not yet implicated in judicial proceedings will not necessarily meet the higher threshold imposed by the First Amendment with respect to judicial documents.")  This is because "the showing required in connection with a sealing motion is significantly higher than the burden for obtaining a protective order in civil discovery."  *Rojas v. Triborough Bridge & Tunnel Auth.*, No. 18-CV-1433 (PKC), 2022 WL 773309, at *4 (S.D.N.Y. Mar. 14, 2022).

The balancing of this presumption against the countervailing factors determines what findings a court must make to seal a document.  Where a common law right of access applies, a court must "make specific, rigorous findings before sealing the document or otherwise denying public access."  *Newsday LLC*, 730 F.3d at 167 n.15.  However, if the weight of the presumption of access is modest, "a court must still articulate specific and substantial reasons for sealing such material," but "the reasons usually need not be as compelling as those required to seal" judicial documents like "summary judgment filings."  *Brown*, 929 F.3d at 50.

### B.  *The First Amendment Right of Access*

The First Amendment provides a qualified right of access to court records.  There are two approaches for determining if such a right attaches to a particular document.  The "'experience

---

[1] Available at ECF No. 577.

and logic' approach requires the court to consider both whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.'" *Lugosch*, 435 F.3d at 120 (*Pellegrino*, 380 F.3d at 92).  "The second approach considers the extent to which the judicial documents are "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." *Lugosch*, 435 F.3d at 120 (quoting *Pellegrino*, 380 F.3d at 93).  For example, "[t]he transcript of a proceeding is so closely related to the ability to attend the proceeding itself that maintaining secrecy is appropriate only if closing the courtroom was appropriate." *Newsday LLC*, 730 F.3d at 165.

Documents submitted to a court as part of a summary judgment motion enjoy a First Amendment right of access, *Brown*, 929 F.3d at 47, as do motions for class certification, s*ee, e.g., Yext, Inc.*, 2016 WL 1451548, at *3; *Gawker Media LLC*, 2015 WL 7288641, at *2, and *Daubert* motions, *see, e.g.*, *Zimmer*, 2021 WL 4706199, at *2; *Am. Railcar Indus., Inc. v. Gyansys, Inc.*, No. 14-CV-8533 (AJN), 2017 WL 11501880, at *1 (S.D.N.Y. May 8, 2017); *Republic of Turkey*, 425 F. Supp. 3d at 221.

If a First Amendment right of access applies, "documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (cleaned up).  "Broad and general findings by the trial court . . . are not sufficient to justify closure," *id.* (internal quotations omitted), and the Court of Appeals has cautioned courts against making "generalized statements about the record as a whole" to justify sealing decisions, *Brown*, 929 F.3d at 48.  The showing required to seal a document to which a First Amendment right of access attaches is thus more stringent than the showing required under the common law framework.  *Lugosch*, 435 F.3d at

124.

Higher values that may justify sealing even under this standard include "the privacy interests of innocent third parties."[2]  *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987).  Courts have also found that in certain circumstances, business data such as pricing information and negotiations may remain under seal even where the First Amendment is implicated.  *See, e.g.*, *Zimmer*, 2021 WL 4706199, at *2.

This latter category, however, is susceptible to abuse if liberally applied.  *Ferring Pharmacueticals Inc.*, for example, decried the "abuse of the public filing rule" when parties sought to redact or seal expert analysis, agreement terms, and exhibits that would likely be introduced at trial.  2020 WL 949423, at *1–2.  This is particularly true in the case of motions for summary judgment.  *Joy*, for example, reversed the sealing of a report by the special litigation committee of a public company that was submitted in connection with a motion for summary judgment as part of a shareholder derivative action.  692 F.2d at 893.  The Court of Appeals rejected the proposition that "derivative actions may be routinely dismissed on the basis of secret documents" because "confidence in the administration of justice would be severely weakened" and "any other rule might well create serious constitutional issues."  *Id.* at 893.  The *Joy* sealing analysis concluded by noting that "foreclosing public scrutiny of the grounds for this adjudication is wholly unjustifiable." *Id*. at 894.

Even when sealing is appropriate under either the common law or First Amendment framework, it must be "narrowly tailored," meaning that a court should "seal only that information that needs to be sealed in order to preserve higher values."  *Signify Holding B.V. v.*

---

[2] Similarly, "as a general rule, there is no constitutional right of access to traditionally nonpublic government information."  *N.Y. Times Co. v. Dep't of Justice*, 806 F.3d 682, 688 (2d Cir. 2015) (cleaned up).

*TP-Link Rsch. Am. Corp.*, No. 21CV9472JGKKHP, 2022 WL 3704002, at *1 (S.D.N.Y. Aug. 26, 2022).  When "some sealing of a judicial document is appropriate, the Second Circuit has directed that the Court should determine whether partial redaction of the private material is 'a viable remedy,' or whether the document presents 'an all or nothing matter.'"  *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, No. 14-CV-6867 (VEC), 2016 WL 1071107, at *4 (S.D.N.Y. Mar. 18, 2016) (quoting *Amodeo II*, 71 F.3d at 1053).

Finally, while the moving party bears the burden of justifying sealing, the ultimate task of balancing these interests "rests heavily upon the shoulders of the trial judge."  *Matter of New York Times Co.*, 828 F.2d at 116.  The court must balance the harms of disclosure not only to the parties but also to non-parties who may not be before the court, s*ee, e.g.*, *id.*, against protecting the interests of the public and press who, similarly, are frequently not before the court when sealing motions determining their rights of access are determined.

There is temptation, when a district court is faced with a deluge of sealing motions, to effectively outsource sealing determinations to the parties by approving or even pre-approving sealing requests that the parties agree on.  This inevitably leads to large portions of the docket being filed under seal.  *See, e.g.*, *Brown*, 929 F.3d at 46 (noting that after "the District Court entered a Sealing Order that effectively ceded control of the sealing process to the parties . . . 167 documents—nearly one-fifth of the docket—were filed under seal."  This, as *Brown* noted is not acceptable.  It is ultimately the district court's responsibility to supervise its records, *id.* at 51, and make its own findings when a party requests to seal or redact a document.  With these principles in mind, I turn to the to the pending sealing requests.

## II.    <u>Discussion</u>

Currently, there are 37 sealing motions pending.  I address 12 of these below based on the

standards set out above.

### A. *The Dr. Gary French Materials (Doc. 1405, 1411)*[3]

Keurig and TreeHouse Foods, Inc., Bay Valley Foods, LLC, Sturm Foods, Inc. (collective "TreeHouse") move to redact or otherwise seal certain information in Keurig's memorandum of law to exclude the report and testimony of Dr. Gary French, as well as various supporting exhibits.  Both parties seek to redact or completely seal different components of these materials.  Specifically, Keurig seeks to completely seal exhibits at Docs. 1410-1, 1410-2, 1410-4, and 1410-6.  It seeks partial redactions to its opposition motion at Doc. 1408, and exhibits at Docs. 1410-3, 1410-15, 1410-17, 1410-18, and 1410-19.  (Doc. 1405.)  TreeHouse seeks partial redactions to Doc. 1408, and to exhibits at 1410-17 and 1410-19.  (Doc. 1411.)

*Daubert* motions are subject to the qualified First Amendment right of access.  *Zimmer*, 2021 WL 4706199, at *2; *Gyansys, Inc.*, 2017 WL 11501880, at *1 (S.D.N.Y. May 8, 2017); *Republic of Turkey*, 425 F. Supp. 3d at 221.  Accordingly, these papers may only be sealed or redacted if movants can offer information that would support "specific, on the record findings" "demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Lugosch*, 435 F.3d at 120 (cleaned up).

Neither Keurig nor TreeHouse have met this burden.  Both parties note that this material is subject to a protective order entered at Doc. 496 (the "Protective Order").  (Doc. 1405, at 1–2, Doc. 1411, at 1.)  A document, however, cannot be sealed simply because it is subject to a protective order.  *Newsday LLC*, 730 F.3d at 166.  The rationales the parties supply beyond this consist of "[b]road and general findings" that "are not sufficient to justify closure."  *Lugosch*, 435 F.3d at 120 (cleaned up).  Keurig asserts only that the various documents contain

---

[3] "Doc." in each header references the relevant motion.

"commercially sensitive information" such as "margin and pricing data" or "transaction data." (Doc. 1405, at 1–2.)  It does not explain why this information is sensitive or how harm will result if it is disclosed.  Similarly, TreeHouse simply states that disclosure will "cause material injury" without explaining how or why that would result.  Neither party offers explanations for their proposed sealing on a document-by-document basis, which would be necessary for me to render the specific findings required to meet the stringent First Amendment requirements for sealing or redacting these filings.

The request to seal or redact these materials is therefore denied in its entirety.  However, at the parties' discretion, the names, emails, and phone numbers of Keurig employees in Doc. 1410-4 may be redacted.

### B.  *The Class Certification Opposition Materials (Doc. 1416)*

Keurig moves to redact and/or seal certain information in its memorandum of law opposing class certification for certain plaintiffs as well as exhibits submitted in support of this motion.  Specifically, Keurig seeks to completely seal exhibits at Docs. 1418-1, 1418-2, 1418-3, 1418-13, 1418-14, 1418-15, 1418-16, 1418-18, 1418-21, and 1418-25.  It seeks partial redactions to its opposition motion at Doc. 1420, and exhibits at Docs. 1418-4, 1418-8, 1418-9, and 1418-11.

The qualified First Amendment right of access applies to documents filed in connection with class certification proceedings.  *Yext, Inc.*, 2016 WL 1451548, at *3; *Gawker Media LLC*, 2015 WL 7288641, at *2.  As with the materials discussed in Section II.A, Keurig has not met the stringent burden required to seal materials to which a First Amendment right of access has attached.  For certain items, such as Docs. 1418-11, 1418-18, 1418-21, and 1418-25, it offers no justification beyond the fact that a party has named the document confidential or otherwise

protected under the Protective Order; this is insufficient, *see Newsday LLC*, 730 F.3d at 166.  For

other items such as Docs. 1418-1, 1418-2, 1418-3, 1418-13, 1418-14, 1418-15, and 1418-16,

Keurig simply states in a conclusory manner that the information contained is "commercially

sensitive" or otherwise sensitive.  It does not explain why these sensitivities implicate the

"higher values" necessary to permit sealing when the First Amendment right of access is

implicated.  *Lugosch*, 435 F.3d at 120.  Accordingly, Keurig has not provided me with

information to support the kind of specific findings necessary to justify sealing.

The request to seal or otherwise redact these materials is therefore denied in its entirety.

However, at the parties' discretion, the names, emails, and phone numbers of individual

employees in Doc. 1418-25 may be redacted.

### C.   *The McLane Summary Judgment and Daubert Materials (Doc. 1746)*

Plaintiff McLane Company, Inc. ("McLane") proposes to redact information from a

broad array of documents connected to various *Daubert* motions, class certification motions, and

summary judgment motions.  McLane requests redactions for three different categories of

information: (1) information related to its supply and customer contractual material (Doc. 1746,

at 2–4); (2) information related to its proprietary business practices, (*id.* 4); and (3) personal

information of various individuals, (*id.* 4–5).  It has provided appendices setting out the rationale

for sealing or redacting each document.  Docs. 1778-1–1778-3.  Summary judgment and *Daubert*

motions are subject to a First Amendment right of access, so the burden is on McLane to

demonstrate that its requests are narrowly tailored to preserve higher values.

### 1.  Supplier and Customer Contractual Information

McLane requests to redact information about business relationships with customers and

suppliers.  The information it wishes to redact is set out at Docs. 1778-4 through 1778-52, and

summarized in Doc. 1778-1.  All the proposed redactions are connected to documents submitted in connection with *Daubert* motions, motions for class certification, or motions for summary judgment.

As a preliminary matter, although McLane has requested sealing pursuant to the three-part balancing test set out in *Lugosch*, 435 F.3d 110, motions for summary judgment, *Brown*, 929 F.3d at 47, class certification motions, *Yext, Inc.*, 2016 WL 1451548, at *3; *Gawker Media LLC*, 2015 WL 7288641, at *2, and *Daubert* motions involve the more stringent test associated with the First Amendment right of access, *see, e.g.*, *Zimmer*, 2021 WL 4706199, at *2, *Gyansys, Inc.*, 2017 WL 11501880, at *1.  Sealing commercially sensitive information may still be permissible under this standard, *Zimmer*, 2021 WL 4706199, at *2, but must be carefully policed for abuse, particularly when it is connected to a motion for summary judgment, *see generally Saks Inc. v. Attachmate Corp.*, No. 14 CIV. 4902 CM, 2015 WL 1841136, at *14–16 (S.D.N.Y. Apr. 17, 2015) (noting with concern the potential for parties to abuse commercial secrets designations and decrying "the worrying trend toward *de facto* secret litigation.")

With this in mind, I address McLane's requests in Table 1 below.  References to pages and paragraphs refer to a document's pagination and paragraph markers unless otherwise noted. I address each request individually, but the consistent thread of McClane's requested redactions is that it does not want to reveal that it consistently made more than 99 percent of its K-Cup sales to Walmart at a four to six percent mark-up over the price it paid.  Indeed, these two facts and minor variations on them account for the bulk of McClane's proposed redactions.  Even accepting that this might be confidential information, the point is simply too relevant to this dispute to permit sealing.  McClane's Walmart sales and mark-ups are basic facts underlying McClane's arguments against Keurig at numerous points.  Similarly, McLane makes repeated

efforts to seal information related to how it sold K-Cups with Walmart, a sales relationship that appears to have terminated by 2016.  Again, the business details of this relationship are an inextricable part of this case and McClane cannot initiate a lawsuit based on its K-Cup business and then seek to shield almost all of the salient details of this business from the public.  As in *Joy*, it would be "unjustifiable" to prevent the public from fairly scrutinizing the adjudication of this dispute by concealing a key fact about the business dynamics at play in this case.  692 F.2d at 894.  Moreover, accepting this would invariably result in the sensitive business exception swallowing the First Amendment Rule.

| Table 1: Sealing and Redaction Requests McLane Supplier and Customer Contractual Information | | | |
|---|---|---|---|
| **McLane Exhibit Number of Document to be Sealed** | **Associated Doc. No.** | **Motion or Motions Associated With Sealing Request** | **Ruling** |
| A1 | 1778-4 | *Daubert* | The request to redact this document is denied.  Several proposed redactions cover generic material (*e.g.* "millions of dollars", "more than 99 percent"), that is sometimes not even associated with specific dates.  Information presented at this level of generality is too broad to reasonably be considered commercially sensitive.  Other redactions cover McClane's business relationship with Walmart, but in general terms that cannot reasonably be considered sensitive.  Finally, some redactions discuss the 99 percent sales figure and the 4 to 6 percent mark-up, which I have already indicated is not a proper subject for sealing. |
| A2 | 1778-5 | Class Certification | The request to redact this document is denied, because proposed redactions contain general pricing information that is too non-specific to reasonably be considered sensitive. |

| A3 | 1778-6 | *Daubert* | These redactions cover substantially the same information McClane seeks to redact in Docs. 1778-4 and 1778-5, and are denied for substantially the same reasons. |
| A4 | 1778-7 | *Daubert* | The request to redact this document is denied. The requested redaction contains general and non-specific information integrated into a hypothetical scenario. This material is not confidential information. |
| A5 | 1778-8 | *Daubert* | These redactions target information that is substantially similar to the redactions sought in Doc. 1778-6. Therefore, they are denied for substantially the same reasons. |
| A6 | 1778-9 | *Daubert,* Summary Judgment | These redactions target information that is substantially similar to the redactions sought in Doc. 1778-6, and are denied for substantially the same reasons. I further note that, since this information is submitted in connection with a summary judgment motion, there is even less of a basis to redact it than in Doc. 1778-6. |
| A7 | 1778-10 | *Daubert,* Summary Judgment | The requested to redact this document is denied. The requested redaction concerns a generic and conditional summary of business practices that cannot reasonably be considered commercially sensitive. |
| A8 | 1778-11 | *Daubert,* Summary Judgment | The request to redact this document is denied. The redaction concerns a single comparative price point from an unspecified time. This is not specific enough confidential data to overcome the presumption of access. |
| A9 | 1778-12 | *Daubert,* Summary Judgment | The request to redact this document is denied. The proposed redactions summarize business relationships from 2012 to 2015 exclusively between McClane, Keurig, and Walmart, the first two of which are adverse parties in this case. Seven to ten-year-old information about the relationship between two adverse parties is not the kind of confidential business information that could reasonably be expected to harm McClane. |
| A10 | 1778-13 | *Daubert,* Summary Judgment | The request to redact this document is denied. The proposed redactions are not actual business data but recitations of estimates or projections from an adverse |

| | | | | |
|---|---|---|---|---|
| | | | | expert report.  This is not the kind of confidential information that is properly sealed. |
| A11 | 1778-14 | Class Certification, *Daubert*, Summary Judgment | | The request to redact this document is denied.  Several redactions relate to facts I have already determined are not proper subjects for redaction in relation to Docs. 1778-6 and 1778-9. Others challenge expert projections and calculations of damages.  It is not clear, and McClane does not explain, why expert projections developed by interested parties specifically for the use in litigation are confidential information that a competitor would reasonably rely on. |
| A12 | 1778-15 | *Daubert* | | The request to redact this document is denied.  These redactions are similar expert projections to the ones discussed in Doc. 1778-14, and their redaction is denied for substantially the same reasons. |
| A13 | 1778-16 | *Daubert* | | The request to redact this document is denied.   McClane suggests that this redaction relates to its relationship with third-party companies, but it appears to simply be an expert's estimate of various companies' market share without any apparent connection to McClain's business relationships.   In the absence of more specific information, I cannot make the findings necessary to justify sealing. |
| A14 | 1778-17 | Summary Judgment | | The request to redact this document is denied. The proposed redaction on page 106 of this document is a generic statement with no actual confidential information.   The proposed redaction on page 107 relates to a decade-old agreement between McClane and Walmart, that is also connected and similar to kind of information I have already declined to redact in Docs. 1778-4, 1778-5, and 1778-6. |
| A15 | 1778-18 | Summary Judgment | | The request to redact this document is denied.  Some of the information McClane seeks to redact is too generic to be sensitive or summarizes agreements in broad terms (e.g., ¶¶ 859, 862, 865).  Some of it is more specific but appears to connect to an agreement between Walmart and McClane |

| | | | |
|---|---|---|---|
| | | | made in 2011 (e.g., ¶ 883).  In the absence of more specific assertions about why decade-old information poses a competitive risk, the substantial burden to seal information connected to a motion for summary judgment is not met.  Finally, much of it is the kind of information I have already declined to redact in Docs. 1778-4, 1778-5, and 1778-6. |
| A16 | 1778-19 | Summary Judgment | The request to redact this document is denied.  The document is an email chain that is more than a decade old.  McClane does not offer anything to credibly suggest that this apparently stale information is properly sealed. |
| A17 | 1778-20 | Summary Judgment | The request to redact this document is granted.  The redactions concern specific portions of a 2012 contract McClane negotiated.  While I am somewhat doubtful that a decade-old contract is properly sealed, McClane has specifically indicated that it will be harmed if these contract provisions are disclosed because competitors will be able to leverage these disclosures.  (Doc. 1746, at 3.)  Thus, as in *Home Box Off., Inc.*, I am satisfied that these provisions reflect current practices that, if revealed, could be leveraged by competitors.  26 F. Supp. 2d at 614. |
| A18 | 1778-21 | Summary Judgment | The request to redact this document is denied.  The redactions concern specific provisions of a 2012 contract addendum.  Accordingly, they may be sealed for the same reasons discussed with regard to Doc. 1778-20. |
| A19 | 1778-22 | Summary Judgment | The request to redact this document is granted.  The redactions concern specific provisions of a 2012 contract addendum.  Accordingly, they may be sealed for the same reasons discussed with regard to Doc. 1778-20. |
| A20 | 1778-23 | Summary Judgment | The request to redact this document is granted.  The redactions concern specific provisions of a contract.  Accordingly, they may be sealed for the same reasons discussed with regard to Doc. 1778-20. |

| A21 | 1778-24 | Summary Judgment | The request to redact this document is denied. The redactions concern emails from 2015, which discuss a specific overstocking issue at that time between McClane and Smuckers. McClane does not provide, nor do I see, any evidence that these emails discuss a current practice that could reasonably be classified as sensitive or confidential. |
| --- | --- | --- | --- |
| A22 | 1778-25 | Summary Judgment | The request to redact this document is denied. The redactions relate to another 2015 email chain discussing a specific overstocking issue. The email covers similar issues to those in Doc. 1778-24, and redaction is denied for substantially the same reasons. |
| A23 | 1778-26 | Summary Judgment | The request to redact this document is denied. The requested redactions are contained in a 2012 email chain discussing a specific overstocking issue. The email covers similar issues to those in Doc. 1778-24, and redaction is denied for substantially the same reasons. |
| A24 | 1778-27 | Summary Judgment | The request to redact this document is denied. McClane proposes an extensive set of redactions to a deposition transcript submitted in connection with a summary judgment motion. While it suggests in a cursory manner that this information is sensitive and confidential because it relates to contract terms, (Doc. 1778-1, at 6), the redactions cover more than contract terms. Some of the redactions cover information similar to that in Doc. 1778-4, which I have already indicated may not be redacted. Others relate to general business practices not directly connected to a contract. I cannot make the specific findings necessary to justify the sealing of such a broad range of information on the basis of this cursory justification. |
| A25 | 1778-28 | Summary Judgment | The request to redact this document is granted in part and denied in part. The proposed redactions to pages 22–25 and 33 are substantially the same type of information I have already indicated may |

| | | | |
|---|---|---|---|
| | | | not be redacted in Doc. 1778-4. The redactions to pages 28–30 are permitted because they deal with current business relationships and sales numbers. The redaction to page 68 is denied because it is a single sales number from 2013 which does not relate to McClane's proposed rationale of protecting confidential business strategies. (Doc. 1778-1, at 7.) |
| A26 | 1778-29 | Summary Judgment | The request to redact this document is granted in part and denied in part. The material on pages 140–141 may be redacted because it covers an unrelated commercial transaction. The remaining redaction requests are denied because they discuss forecasting methods and deals that appear to have been used in 2014, and which appear to be specifically related to the business practices associated with single-serve Keurig products. It is not apparent from this data, nor does McClane explain, beyond conclusory assertions, why this information remains sensitive some eight years later. |
| A27 | 1778-30 | Summary Judgment | The request to redact this document is denied. The redactions address McClane's use of forecasting methods for various commercial transactions specifically related to its sale of Keurig K-Cups. All of the relevant business relationships were terminated by 2016, and McClane provides only conclusory assertions of commercial sensitivity to explain why this highly specific and seeming stale information should be redacted. |
| A28 | 1778-31 | Summary Judgment | The request to redact this document is denied. McClane proposes an extensive set of redactions to a deposition transcript submitted in connection with a summary judgment motion but does not explain with any specificity why these redactions are appropriate, save for a single reference to page 136, where it notes that it sells candy to Walmart. These conclusory assertions cannot justify redaction. |

| A29 | 1778-32 | Summary Judgment | The request to redact this document is denied, because the requested redactions relate to the kind of pricing and forecasting information I concluded is not appropriate for sealing in the context of Docs. 1778-4 and 1778-29. |
|---|---|---|---|
| A30 | 1778-33 | Summary Judgment | The request to redact this document is granted.  The requested redactions address specific provisions of a 2011 contract between McClane and Walmart. McClane has indicated that these provisions are relevant to the broader long-term working relationship between these companies and that specific redactions of key agreements are therefore necessary to protect McClane from competitive harm. (Doc. 1778-1, at 8.) Additionally, the reasons for protecting contracts I discussed in relation to Doc. 1778-20 apply here. |
| A31 | 1778-34 | Summary Judgment | The request to redact this document is granted.   The requested redactions are granted as they relate to contract provisions between Walmart and McClane substantially similar to the ones I approved in Doc. 1778-33. |
| A32 | 1778-35 | Summary Judgment | The request to redact this document is denied.   The document is a 2016 email thread addressing business questions between McClane and Walmart in general terms.  McClane does not provide more than conclusory assertions as to why this six-year-old email chain is the kind of sensitive information likely to have broader competitive harms. |
| A33 | 1778-36 | Summary Judgment | The request to redact this document is granted.  The redactions relate to the specific terms of a 2014 contract, which I find are properly redacted for substantially the same reasons as discussed in Doc. 1778-20. |
| A34 | 1778-37 | Summary Judgment | The request to redact this document is denied.    This document is Keurig's memorandum of law in support of its motion for summary judgment, and it is particularly inappropriate to seal the party's actual moving papers (as opposed to supporting evidence) absent the most compelling of |

| | | | |
|---|---|---|---|
| | | | reasons.   The information McClane proposes to seal, moreover, is either information like the content discussed in Doc. 1778-4, which is not appropriately redacted, or generic assertions that do not work a competitive harm. |
| A35 | 1778-38 | Summary Judgment | The request to redact this document is granted in part and denied in part.   The proposed redactions to footnote 161 are granted to the degree that they address current sales and business relationships. They are denied to the degree that they discuss sales associated with McClane's old K-Cup business. The proposed redactions to ¶¶ 163, 167, and 169 are denied because they relate specifically to K-Cup transactions from 2016, and McClane does not provide any non-conclusory explanation why information related to a specific product at the heart of this litigation is likely to work a broader competitive harm if released.   The remaining redactions are denied because they are the kind of material that I addressed in my analysis of Doc. 1778-4, which is not appropriate for sealing. |
| A36 | 1778-39 | Summary Judgment | The request to redact this document is denied. The document contains requests for admissions discussing contract provisions between McClane and Smucker.   The content is, as might be expected given that it was prepared by attorneys, heavily qualified, and framed in highly generic terms.  Accordingly, this material lacks the specificity or detail to justify sealing. |
| A37 | 1778-40 | Summary Judgment | The request to redact this document is denied. This document is an internal 2016 McClane email summarizing its position on a K-Cup proposition by Walmart. McClane does not explain in more than a conclusory fashion why a brief six-year-old email related to a specific promotion is so sensitive that it is likely to inflict a competitive harm on McClane if released. |
| A38 | 1778-41 | Summary Judgment | The request to redact this document is denied.  This document is an email chain discussing 2016 K-Cup transactions with |

| | | | |
|---|---|---|---|
| | | | Walmart.  It is similar to the material in Docs. 1778-35 and Docs. 1778-40, and redaction of this material is denied for substantially the same reason. |
| A39 | 1778-42 | Summary Judgment | The request to redact this document is denied.   This document is an email discussing 2016 K-Cup transactions with Walmart.  The proposed redactions cover content similar to that of Docs. 1778-35, 1778-40, and 1778-41, and I deny them for substantially the same reasons. |
| A40 | 1778-43 | Summary Judgment | The request to redact this document is denied.  This document is a set of business records related to the McClane's K-Cup sales to Walmart from 2012 to 2015, with some projections for 2016.  McClane does not explain why this apparently stale and deal-specific information would inflict a broader competitive harm on it. Additionally, some of the information related to mark-ups is the type of information that, consistent with my analysis of Doc. 1778-4, is not appropriate for redaction. |
| A41 | 1778-44 | Summary Judgment | The request to redact this document is denied.  This document is a 2013 email chain about a K-Cup-based interaction with Walmart.  I have found similar, more recent emails are not appropriate for redaction (*i.e.*, Docs. 1778-35, 1778-40, 1778-41, 1778-42); therefore, I find these redactions are inappropriate for the same reasons. |
| A42 | 1778-45 | Summary Judgment | The request to redact this document is denied.     McClane   seeks   to   redact information   similar   to   the   redactions I denied for Doc. 1778-4, and the request is denied for substantially the same reasons. |
| A43 | 1778-46 | Summary Judgment | The request to redact this document is granted in part and denied in part.   The proposed redactions to footnote 161 are granted to the degree that they address current sales and business relationships. They are denied to the degree that they discuss sales associated with McClane's old K-Cup business. The proposed redactions to ¶¶ 163, 165 to 169, and any associated |

| | | | |
|---|---|---|---|
| | | | footnotes are denied because they relate specifically to K-Cup transactions from 2016, and McClane does not provide any non-conclusory explanation why information related to a specific product at the heart of this litigation is likely to work a broader competitive harm if released. The remaining proposed redactions are the kind of material that, consistent with my analysis of Doc. 1778-4, is not appropriate for sealing. |
| A44 | 1778-47 | Summary Judgment | The request to redact this document is denied. The requested redactions concern hypothetical of the type I have already indicated is inappropriate for redaction in Doc. 1778-7, and the request is denied here for the same reasons. |
| A45 | 1778-48 | Summary Judgment | The request to redact this document is denied. First, McClane only specifically indicates that it seeks redactions to a specific paragraph even though numerous redactions in a similar color appear throughout the document. If these redactions are also sought by McClane, it has provided no basis for them and so has failed to meet its burden. As to the sole item it seeks to redact (¶ 859), the proposed redaction is illogical since it redacts only part of a line while leaving the summary of the line that explains its import. The proposed redaction would thus create confusion without actually redacting the relevant information. |
| A46 | 1778-49 | Summary Judgment | The request to redact this document is denied. This is an internal 2012 email exchange discussing McClane and Keurig's negotiations. Although McClane indicates that this email is relevant to its contract negotiations more generally, a decade-old internal discussion of a contract negotiation between litigation adversaries is simultaneously too stale to justify sealing on broader competitive grounds and too relevant to the understanding of the present dispute to warrant redaction. |
| A47 | 1778-50 | Summary Judgment | The request to redact this document is denied. This document is a 2012 email |

| | | | |
|---|---|---|---|
| | | | chain discussing a specific overstocking issue.  The email covers similar issues to those in Docs. 1778-24 and 1778-26, and the requested redactions are denied for substantially the same reasons. |
| A48 | 1778-51 | Summary Judgment | The request to redact this document is denied because the redactions cover the same kind of information as in Doc. 1778-4; therefore,  the requested redaction is denied for substantially the same reasons |
| A49 | 1778-52 | Summary Judgment | The request to redact this document is denied.  The document contains requests for admissions discussing contract provisions between McClane and Smucker.  The content is, as might be expected given that it was prepared by attorneys, heavily qualified and framed in highly generic terms, and redaction is thus not appropriate for the same reasons I identify for Doc. 1778-40.  The content, moreover, is substantially similar to the content in Doc. 1778-4, which again, is not the appropriate subject for redaction. |

## 2.  Proprietary Business Practices

McLane requests to redact information about proprietary business practices.  The information they wish to seal or redact is set out at Docs. 1778-53 to 1778-88 and summarized in Doc. 1778-2.  Each of these documents are filed in connection with motions for summary judgment and Doc. 1778-53 also appears in *Daubert* motions.  The First Amendment right of access therefore attaches to these documents.  *Brown*, 929 F.3d at 47.

McClane's request to seal these documents is denied because they have not overcome the burden imposed by the stringent test for sealing or redacting materials under the First Amendment.  McClane asserts that the information in the proposed redactions "reference[s] McLane's proprietary business practices and strategies, such as methods for measuring demand, creating forecasts, and placement of orders for its customers."  (Doc. 1746, at 4.)  The supporting

27

appendix provides virtually no additional information that would permit me to make the specific findings necessary to justify sealing under the First Amendment test.  In most cases, McClane simply asserts that the information in a particular document is "commercially sensitive" without providing additional information.  *See* Doc. 1778-2.  These kind of "broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test" for sealing.  *Coventry Cap. US LLC*, 2017 WL 5125544, at *3 (cleaned up).  Docs. 1778-55 and 1778-56 are not even described as commercially sensitive.  (Doc. 1778-2, at 1.)

The contrast between this request, and *Home Box Off., Inc.*, which McClane cites, is instructive.  26 F. Supp. 2d at 613.  There, "Defendants submit[ed] numerous affidavits attesting to the confidentiality of the information they [sought] to seal."  *Id.*  This included "specific testimony that, for example, the cost and profit structures of the defendants, the volume of subscribership and the strategies employed . . . have not significantly changed since 1991" and testimony that key agreements which the defendants wished to seal were "still in force."  *Id.* at 614.  The sworn testimony describing specific harms in detail differentiates *Home Box Off., Inc.* from McClane's requests.

Nor, based on my review, are any of these documents so facially sensitive that they would merit sealing even on this limited showing.  Some of this material is eight or nine years old at this point.  McClane does not explain why this apparently stale information is still commercially sensitive.  (*See, e.g.*, Docs. 1778-62, 1778-63, 1778-64.)  Other material appears highly specific to McClane's old K-Cup business so it is not clear why it would work a broader competitive harm on McClane if disclosed now.  (*See, e.g.*, Docs. 1778-64, 1778-68, 1778-72, 1778-75, 178-81.)  Some information is so generic that it is not clear why it would work a competitive harm.  (*See, e.g.*, Docs. 1778-65, 1778-69, 1778-71.)  In the absence of any facially

28

sensitive information, crediting the unsworn and generic assertions of harm made by McClane would permit the sensitive commercial information exception to swallow the First Amendment rule. Accordingly, the requested redactions are denied.

### 3.   Personal Information of Current and Former Employees

McLane requests to redact the phone numbers and email address of various individual employees that appear in exhibits supporting Plaintiffs' motion for summary judgment, Keurig's motion for summary judgment, and oppositions to these motions. This personal information appears at Doc Nos. 1778-89 to 1778-114, and is summarized in Doc. 1778-3.

These requests are granted. I have reviewed the proposed redactions in each of these as they relate to the email addresses and phone numbers of individuals.[4] The privacy of third parties is the type of higher value that justifies sealing even where the First Amendment right of access attaches. *Matter of New York Times Co.*, 828 F.2d at 116. In some cases, however, these redactions cover information that is clearly not private. Doc. 1778-98 seeks to redact corporate website (*e.g.*, "Keurig.com", "KeurigGreenMountain.com"), which is not appropriate and therefore the request to redact this type of information is denied.

### D.   *The AVB, DCS, and HWY Requests (Docs. 1755, 1765, 1774)*

Non-parties AVB Sales and Marketing, LLC ("AVB"), (Doc. 1755), Demitri Chesapeake Sales Specialty Brokerage ("DCS"), (Doc. 1765), and Harold W. Young Partners ("HWY"), (Doc. 1774), request to seal certain documents. These requests are granted to the extent that they relate to employees' personal information but are otherwise denied.

AVB requests to redact several paragraphs of Exhibit 141 of Doc. 1497. Specifically,

---

[4] In certain cases, McClane has including redactions based on multiple grounds in a single request. For example, McLane references the same email chain with the same proposed redactions twice: once to request the redaction of commercially sensitive information, (Doc. 1753-24), and once to request redactions of personal information (Doc. 1753-89). My approval of redactions of personal information does not extend to these other redactions.

AVB seeks to redact paragraphs 8, 9, 10, 11, 13, 14, 15, 16, 17, and 18.  (Doc. 1763-1.)  DCS requests partial redactions covering employee personal information and business suppliers referenced in a 2016 email.  (Doc. 1771-1.)  HWY requests partial redactions covering employee personal information and business suppliers referenced in a 2012 email.  (Doc. 1777-1.)  All of these materials have been submitted in connection with motions for summary judgment.

These movants use virtually identical and equally generic language in their requests.  In each case they assert that if this information becomes public, customers or business partners referenced "could become prejudiced towards [movant], resulting in lost revenues."  They further assert that this information "may place [movant] at a competitive disadvantage were it to become public."  (*Compare* Docs. 1755, 1765, 1774.)  They provide no additional detail or declarations explaining why prejudice would result or what competitive harm would accrue.

As these materials have been submitted in connection with a motion for summary judgment, they are subject to the more stringent First Amendment standard for sealing.  *Brown*, 929 F.3d at 47.  I have already found that the redaction of personal employee information is permissible under this test in connection with McClane's request to seal.  *See infra* Section II.C.3.  Redacting the phone numbers and emails of employees is permissible here for the same reasons.

Movants do not otherwise make the showing required to support sealing.  The type of "generalized concern of negative reaction" they proffer is not sufficient to overcome the common law presumption of access to documents like complaints.  *Kim v. BTG Pactual Asset Mgmt. US, LLC*, No. 22-CV-3547 (RA), 2022 WL 4115955, at *2 (S.D.N.Y. Sept. 9, 2022); *see also Gen. Media, Inc. v. Shooker*, No. 97 CIV. 510 (DAB), 1998 WL 401530, at *12 (S.D.N.Y. July 16, 1998) ("The public interest in access to the courts, and the court's own interest in

allowing such access, far outweigh [a defendant's] generalized concern of negative reaction on his business dealings.")  If generalized business concerns cannot overcome the common-law presumption of access, then it cannot overcome the stronger First Amendment right.

Additionally, even accepting that AVB may have privacy interests as a third-party, those interests are diminished here.  AVB is a broker for products sold by TreeHouse.  (Doc. 1763-1, at ¶ 1.)  It thus has a business relationship with the TreeHouse plaintiffs and a favorable opinion of TreeHouse and its products, (*id.* ¶¶ 20–21), and it also believes that Keurig's practices have cost it business, (*id.* ¶ 1).  Thus, although its privacy interests are entitled to consideration, as in *Olson*, these interests are diminished compared to those of a truly unassociated third-party.  29 F.4th at 91.  Accordingly, I do not find that these third-party privacy interests support redaction either.

As for DCS and HWY, they fail to show why the information they request to seal is not stale.  DCS and HWY seek to redact emails that are 6 and 10 years old respectively.  Although it is possible to show that such information is not so stale as to require disclosure through specific demonstrations of harm, neither movant has provided more than generic assertions.   These broad assertions do not meet the stringent First Amendment test for sealing or redaction.  Movants may therefore redact employee phone numbers and email addresses that appear in these materials, but nothing else.

### E.    *The JBR Materials (Doc. 1789)*

JBR, Inc. ("JBR") requests to seal selected pages of exhibits filed in connection with summary judgment and *Daubert* motions.  Requests to redact or seal materials associated with summary judgment and *Daubert* motions are subject to the more stringent test associated with the First Amendment right of access.

31

The basis for JBR's request is that this information involves aggregate sales revenue, sales to specific customers in specific time frames, pricing and discounting at specific times, capitalized costs of manufacturing and marketing, and margins. (Doc. 1789, at 2.) It also notes that this material has been designated as "highly confidential" under the terms of the Protective Order and that the request is narrowly tailored such that it focuses on only these specific categories of information and does not involve the wholesale sealing or redaction of documents. (*Id.* at 1–2.) The documents JBR wishes to seal and my rulings on these requests are collected in Table 2 below. References to tables, figures, and appendices refer to the relevant item in the document unless otherwise noted.

| Table 2: Sealing and Redaction Requests McLane Supplier and Customer Contractual Information | | | |
|---|---|---|---|
| **JBR Exhibit Letter of Document to be Sealed** | **Associated Doc. No.** | **Motion or Motions Associated With Sealing Request** | **Ruling (all page number )** |
| A | 1790-1 | *Daubert* | The request to redact this document is granted in part and denied in part. JBR seeks to seal information from 2011 to 2019. It does not explain why some of this information that is more than a decade old is not stale. This is notable since JBR has objected to similar efforts by parties to keep information eight years or older under seal. (Doc. 1810, at 6–7.) I agree with JBR that, as a general matter, years', and in some cases decade old information should not be sealed absence a compelling showing. Accordingly, JBR may redact information from 2016 and later in Tables 44, 45, 46, and 48. It may also redact Figures 35, 36, 37, 38, 39, 41, and 42, so that information from 2016 and thereafter can be redacted. All other redaction requests are denied, including requests to redact |

| | | | |
|---|---|---|---|
| | | | aggregated sums (e.g., the total sum from 2012 to 2019). |
| B | 1790-2 | *Daubert* | For the reasons discussed in Doc. 1790-1, JBR may redact specific figures associated with years 2016 forward on ECF pages 7, 9, and 11.  The redaction requests covering information from 2015 and earlier are denied.  The redactions to ECF pages 4 and 6 are also approved.  These redactions concern specific machinery costs and totals that could not be disclosed without making it possible to "reverse engineer" the machinery costs. |
| C | 1790-3 | *Daubert* | JBR may redact Figures 44, 45, 47, 48, 50, and 51 so that information from 2016 onwards is redacted.  All other redaction requests are denied.  The information is stale, and, in any case, JBR has not requested to redact identical information for Doc. 1790-7, so granting the other redaction requests here would be moot. |
| D | 1790-4 | *Daubert* | For the reasons discussed in Doc. 1790-1, JBR may redact specific figures associated with years 2016 forward in Exhibits 40–43, Appendices D.22–25 and Appendices I.1 and I.2. It may also redact Appendices D.10 and D.11 so that information from 2016 onwards is redacted.  All remaining redactions are denied as these items are either aggregate information that is too broad to permit sealing or expert projections and assessments not associated with the specific, actual data for which JBR has requested sealing. |
| E | 1790-5 | *Daubert* | For the reasons discussed in Doc. 1790-1, JBR may redact specific figures associated with years 2016 forward in Exhibits 22, 23, and 24.  It may also redact Exhibits 42, 43, and 44 so that information from 2016 onwards is redacted.  All other redaction requests are denied, including requests to redact aggregated sums (e.g., the total sum from 2012 to 2019). |
| F | 1790-6 | *Daubert* | For the reasons discussed in Doc. 1790-1, JBR may redact specific figures associated with years 2016 forward in Exhibits 22, 23, and 24.  It may also redact Exhibits 42, 43, and 44 so that information from 2016 |

| | | | |
|---|---|---|---|
| | | | onwards is redacted.  All other redaction requests are denied, including requests to redact aggregated sums (e.g., the total sum from 2012 to 2019). |
| G | 1790-7 | Summary Judgment | JBR may redact Figures 44, 45, 47, 48, 50, and 51 so that information from 2016 onwards is redacted. |
| H | 1790-8 | Summary Judgment | For the reasons discussed in Doc. 1790-1, JBR may redact Figures 44, 45, 47, 48, 50, and 51 so that information from 2016 onwards is redacted.   Other redaction requests are denied. |
| I | 1790-9 | Summary Judgment | JBR may redact Figures 38 and 39, as well as Tables 44, 45, 46, and 48, so that information from 2016 onwards is redacted.  All other redaction requests are denied. |
| J | 1790-10 | Summary Judgment | For the reasons discussed in Doc. 1790-1, JBR may redact specific figures associated with years 2016 forward in Exhibits 22 and 23. It may also redact Exhibits 43 and 44 so that information from 2016 onwards is redacted.  All other redaction requests are denied, including requests to redact aggregated sums (e.g., the total sum from 2012 to 2019). |

In cases where I have authorized partial redactions to a table, row, and column heading identifiers must remain unredacted.  This includes year headings, even if specific information associated with that year may be redacted (*e.g.*, if a table showed sales of $1.00 in 2019, the $1.00 may be redacted, but the "2019" table heading may not.)  Where I have partially authorized redactions for a period, information before that period must be disclosed.  For example, if redactions for 2016 onwards are granted for a table that also has information from 2012 to 2015, the 2012 to 2015 figures must be disclosed.

## F.   *The TreeHouse Materials (Doc. 1799)*

TreeHouse requests to seal information submitted in connection with the parties' *Daubert* and summary judgment motions.  (Doc. 1799.)  It requests sealing or redacting across three

different categories of information: (1) recent pricing, margin, sales, and cost information (*id.* 3),

(2) business strategy, bid, and payment information, (*id.* 3–4), and (3) personal information of

current and former employees, (*id.* 4–5).   It has provided appendices setting out the rationale for

sealing or redacting each document.  (Docs. 1799-1 to 1799-3.)  Summary judgment and

*Daubert* motions are, as noted, subject to a First Amendment right of access, so the burden is on

TreeHouse to meet the stringent test for sealing by showing that their sealing requests are

narrowly tailored to preserve higher values.

### 1.  Recent Pricing, Margin, Sales, and Cost Information

TreeHouse requests to redact information about its pricing, margins, sales, and costs.  It

asserts that this is recent, non-public, information that will work a competitive harm on

TreeHouse if it is released.  (Doc. 1799, at 3.)  The redactions it proposes are contained in Docs.

1801-1 through 1801-31, and summarized at Doc. 1799-1.  My rulings on these requests are

collected below in Table 3.  References to exhibits refer to a document's exhibits unless

otherwise noted.  "ECF pages" refers to the pagination applied by ECF.

| Table 3: Sealing and Redaction Requests for TreeHouse Recent Pricing, Margin, Sales, and Cost Information | | | |
|---|---|---|---|
| **TreeHouse Exhibit Number of Document to be Sealed** | **Associated Doc. No.** | **Motion or Motions Associated With Sealing Request** | **Ruling** |
| THS-1 | 1801-1 | Summary Judgment | These redaction requests are granted because they involve sufficiently recent and specific competitive information from 2016.  The proposed redactions are narrow in scope.  Certain redactions also involve personally identifying information that is properly redacted for the reasons discussed in Section II.C.3. infra. |

| THS-2 | 1801-2 | Summary Judgment | These redaction requests are granted because they involve recent and specific competitive information from 2016 and the proposed redactions are narrow in scope. (Doc. 1799, at 3.) |
| THS-3 | 1801-3 | Summary Judgment | These redaction requests are granted because they address specific and recent price information from 2018 onward as well as future economic projections. Although some of the information to be redacted is expert projections that would otherwise be inappropriate for redaction, I find that the data is framed in such a way that unprotected expert information is inextricable from protected commercial information and that higher values still require sealing. |
| THS-4 | 1801-4 | Summary Judgment | This redaction request is denied. These are redactions to a 2016 email that does not reflect actual price points for TreeHouse products. |
| THS-5 | 1801-5 | Summary Judgment | This redaction request is granted. Although TreeHouse does not provide a date for this document, it is functionally identical to the document at Doc. 1801-11. Based on this, redaction is permissible because this is a narrow redaction covering specific price information. |
| THS-6 | 1801-6 | Summary Judgment | This redaction request is denied. Without a date for the information to seal, it is not possible to tell if this information is stale or not. It is also not clear from the face of the document if this is actual TreeHouse pricing information. |
| THS-7 | 1801-7 | Summary Judgment | This redaction request is granted because the redactions are specific 2016 to 2019 pricing information and the redactions are narrowly tailored to address just this information. |
| THS-8 | 1801-8 | *Daubert* | This redaction request is granted. The redactions concern specific pricing and unit sales information from 2019. Although some of the pricing information also covers earlier periods and would otherwise be stale, I find that this information is presented in such a way that |

| | | | |
|---|---|---|---|
| | | | the sensitive information is inextricably connected to the otherwise stale information, and that the redactions are sufficiently narrow that no more information will be sealed than necessary given this issue. |
| THS-9 | 1801-9 | Summary Judgment | This redaction request is granted in part and denied in part. The redactions on ECF pages 4 and 13 are denied. The redactions on these pages are averages aggregating four to seven years of information, which is too broad a range to merit redaction. For the same reason, the total sales numbers in Exhibits 19, 21, and 52 may not be redacted. The remaining information is specific price, cost, and sales information from 2016 onward that may be redacted. |
| THS-10 | 1801-10 | *Daubert* | The request to redact this document is granted because the redaction concern specific price, cost, fixed-cost, and sales information that is from 2016 onward. |
| THS-11 | 1801-11 | Summary Judgment | The request to redact this document is granted for the reasons discussed in Doc. 1801-5. |
| THS-12 | 1801-12 | Summary Judgment | This redaction request is granted because the redactions concern specific 2016 unit pricing information. |
| THS-13 | 1801-13 | Summary Judgment | This document is substantially similar to 1801-12 and these redactions are granted for the same reasons. |
| THS-14 | 1801-14 | Summary Judgment | This redaction request is granted because the redactions are narrowly tailored to address only specific 2016 cost information as well as employee personal information. |
| THS-15 | 1801-15 | Summary Judgment | This redaction request is granted because the redactions concern specific 2016 unit costs. |
| THS-16 | 1801-16 | Summary Judgment | This redaction request is granted because the redactions are narrowly tailored to address only specific 2016 and 2017 cost information as well as employee personal information. |
| THS-17 | 1801-17 | Summary Judgment | This redaction request is granted because the redactions relate to unit cost |

| | | | |
|---|---|---|---|
| | | | information from less than two years ago. (Doc. 1799-1, at 7.) |
| THS-18 | 1801-18 | Summary Judgment | This redaction request is granted because the redactions include specific 2016 sales information as well as employee personal information. |
| THS-19 | 1801-19 | Summary Judgment | This redaction request is granted because the redactions relate to 2016 pricing information and sales incentives. |
| THS-20 | 1801-20 | Summary Judgment | This redaction request is granted in part and denied in part. The redaction to 2012 sales information on ECF page 5 is denied because it is from 2012 and is unredacted on ECF page 4. The remaining redactions are granted because they cover recent, sensitive business information from 2016 onwards. The requests are also narrowly tailored to restrict only that information. Where information in these redactions comes from before 2016, I have determined that it is presented in such a way that the pre-2016 information is inextricable from the post-2016 information and that the interest in preventing competitive harm still merits redaction. |
| THS-21 | 1801-21 | Summary Judgment | This redaction request is granted because the redactions relate to 2016 unit sales. |
| THS-22 | 1801-22 | Summary Judgment | This redaction request is granted because the redactions concern specific cost, price and margin information related to a 2018 product launch and are narrowly tailored to cover only that information. |
| THS-23 | 1801-23 | Summary Judgment | This redaction request is granted because the redactions concern specific margin, price, and sales information from 2017 onwards. Where information in these redactions comes from before 2017, I have determined that it is presented in such a way that the pre-2017 information is inextricable from the post-2017 information and that the interest in preventing competitive harm still merits redaction. |
| THS-24 | 1801-24 | Summary Judgment | This redaction request is granted because the redactions concern specific sales |

| | | | |
|---|---|---|---|
| | | | information for numerous products, including ones irrelevant to the present litigation, for a period from 2016 to 2019. |
| THS-25 | 1801-25 | Summary Judgment | This redaction request is granted because the redactions are narrowly tailored redactions of 2017 price figures for TreeHouse products. |
| THS-26 | 1801-26 | *Daubert* | This redaction request is granted because the redactions are narrowly tailored redactions sales and earnings information from 2017 through 2019. Where information in these redactions comes from outside this period, I have determined that it is presented in such a way that the otherwise stale information is inextricable from the non-stale information and that the interest in preventing competitive harm still merits redaction. |
| THS-27 | 1801-27 | *Daubert* | The redaction request is granted in part and denied in part. The numbers on ECF pages 9–16 are, in the main, expert projections based on expert analysis. These are projections prepared for litigation, not actual competitive information. TreeHouse may redact columns C, D and E of tables in this section (actual competitive information and two more columns to inhibit the "reverse engineering" of that information), but nothing else from this section. The remaining redactions are granted because they include profit and manufacturing capacity information from 2019 to 2020. Where information in these redactions comes from outside this period, I have determined that it is presented in such a way that the otherwise stale information is inextricable from the non-stale information and that the interest in preventing competitive harm still merits redaction. |
| THS-28 | 1801-28 | *Daubert* | This redaction request is granted in part and denied in part. These redactions are, in the main, expert projections based on expert analysis. These are projections prepared for litigation, not actual competitive information. TreeHouse may |

| | | | |
|---|---|---|---|
| | | | redact columns C, D and E of tables on ECF pages 6–8, and 10–13 (actual competitive information and two more columns to inhibit the "reverse engineering" of that information), the manufacturing information in the "Notes and Sources" section on ECF page 13, and column B in the table on ECF page 15. The remaining redactions are either expert projections or are included in unredacted form elsewhere in the document and thus not appropriate for redaction. |
| THS-29 | 1801-29 | *Daubert* | This redaction request is granted because the redactions are narrowly tailored to cover 2017 to 2019 profit and margin information. Where information in these redactions comes from outside this period, I have determined that it is presented in such a way that the otherwise stale information is inextricable from the non-stale information and that the interest in preventing competitive harm still merits redaction. |
| THS-30 | 1801-30 | *Daubert* | This redaction request is granted because the redactions are narrowly tailored to cover specific providing margin and sales information from 2016. |
| THS-31 | 1801-31 | *Daubert* | This redaction request is granted because the redactions concern specific sales, loss, revenue, and cost information from 2016 to 2019. Where information in these redactions comes from outside this period, I have determined that it is presented in such a way that the otherwise stale information is inextricable from the non-stale information and that the interest in preventing competitive harm still merits redaction. |

### 2. Confidential Strategic Business Information

TreeHouse requests to redact information about business practices that it asserts would work a competitive harm on it if the information was publicly disclosed. (Doc. 1799, at 3–4.) The proposed documents to be sealed or redacted are filed at Docs. 1801-32–1801-69, and

summarized at Doc. 1799-2.  All of these documents are filed in connection with motions for summary judgment or *Daubert* motions.  My rulings on these requests are collected below in Table 4.

| Table 4: Sealing and Redaction Requests for TreeHouse  Confidential Strategic Business Information | | | |
|---|---|---|---|
| TreeHouse Exhibit Number of Document to be Sealed | Associated Doc. No. | Motion or Motions Associated With Sealing Request | Ruling |
| THS-32 | 1801-32 | Summary Judgment | This redaction request is denied because the redactions appear to be information on proposed prices in 2016 specific to a particular bid that are not likely to work a broader competitive harm on TreeHouse. |
| THS-33 | 1801-33 | Summary Judgment | This redaction request is denied.  There is no clear date for the information covered by the proposed redactions.  Without this information, I cannot make the findings necessary to justify sealing. |
| THS-34 | 1801-34 | Summary Judgment | This redaction request is denied.  The prices are from 2014 (Doc. 1799-2, at 1) and TreeHouse provides no information to explain why eight-year-old prices are not stale information. |
| THS-35 | 1801-35 | Summary Judgment | This redaction request is granted.  The proposed redactions are narrowly tailored to address price and payment term information from 2014 to 2018.  Where information in these redactions would otherwise be stale, I have determined that it is presented in such a way that the otherwise stale information is inextricable from the non-stale information and that the interest in preventing competitive harm still merits redaction. |
| THS-36 | 1801-36 | *Daubert* | This redaction request is denied because it is generic and does not address specific business information that would plausibly work a competitive harm on TreeHouse.  Rather, it addresses the terms of the |

| | | | |
|---|---|---|---|
| | | | settlement of a lawsuit between Keurig and TreeHouse.   This is not the kind of confidential business information that would work a broader competitive harm on TreeHouse. |
| THS-37 | 1801-37 | *Daubert* | This redaction request is denied for substantially the same reasons as Doc. 1801-36. |
| THS-38 | 1801-38 | *Daubert* | This redaction request is granted in part and denied in part.  The redactions on ECF pages 4, 5, 12 are denied because they are expert opinions prepared for litigation or are otherwise not confidential business information that would work a competitive harm on TreeHouse.  The redactions on ECF page 9 are denied because it is general information from 2014 that is stale and too general to work a competitive harm.  The remaining redactions on ECF pages 6–8, 10, 11, 13, and 15 are granted because they cover recent, competitive business information about bid pricing, costs, and sales prices that could work a competitive harm on TreeHouse. |
| THS-39 | 1801-39 | *Daubert* | This redaction request is denied for substantially the same reasons as Doc. 1801-36. |
| THS-40 | 1801-40 | Summary Judgment | This redaction request is denied.  I cannot determine a clear date for the information TreeHouse proposes to redact so I cannot make the necessary findings to determine if this information is stale or otherwise unsuitable for redaction. |
| THS-41 | 1801-41 | Summary Judgment | This redaction request is denied for substantially the same reasons as Doc. 1801-40. |
| THS-42 | 1801-42 | Summary Judgment | This redaction request is denied for substantially the same reasons as Doc. 1801-36. |
| THS-43 | 1801-43 | Summary Judgment | This redaction request is denied.  TreeHouse does not provide dates for the information it proposes to redact so I cannot make the necessary findings to determine if this information is stale or otherwise unsuitable for redaction. |

| THS-44 | 1801-44 | Summary Judgment | This redaction request is denied. TreeHouse does not provide dates for the information it proposes to redact so I cannot make the necessary findings to determine if this information is stale or otherwise unsuitable for redaction. |
| THS-45 | 1801-45 | Summary Judgment | This redaction request concerns information substantially similar to the information in 1801-32 and the redaction is denied for substantially the same reasons. |
| THS-46 | 1801-46 | Summary Judgment | This redaction request is denied because the information is too generic and non-specific to plausibly work a competitive harm on TreeHouse. |
| THS-47 | 1801-47 | Summary Judgment | This redaction request is denied because the redactions do not involve actual pricing information but general summaries of non-TreeHouse parties negotiating positions from 2016. |
| THS-48 | 1801-48 | Summary Judgment | This redaction request is granted because the redactions are narrowly tailored to cover specific forward looking business strategies from 2017 that remain relevant. |
| THS-49 | 1801-49 | Summary Judgment | This redaction request is denied because the relevant document is from 2012 and there is no credible explanation for why this decade-old information will work a competitive harm on TreeHouse. |
| THS-50 | 1801-50 | Summary Judgment | This redaction request is denied. The date of this information is not apparent so I cannot make the necessary findings to determine if this information is stale or otherwise unsuitable for redaction. |
| THS-51 | 1801-51 | Summary Judgment | This redaction request is denied. The date of this information is not provided but the document appears to be from 2015 or earlier and TreeHouse does not explain why this information is not stale given its apparent age. |
| THS-52 | 1801-52 | Summary Judgment | This redaction request is denied. It does not provide a date for the information TreeHouse proposes to redact so I cannot make the necessary findings to determine if this information is stale or otherwise unsuitable for redaction. |

| THS-53 | 1801-53 | Summary Judgment | This redaction request is granted because the redactions are narrowly tailored to cover specific confidential strategic business planning information from 2016 to 2021. |
|---|---|---|---|
| THS-54 | 1801-54 | Summary Judgment | These redactions cover information substantially similar to the information in 1801-36 and the redactions are denied for substantially the same reasons. Other information covers a contract and dispute with Unilever and TreeHouse does not explain how this information would work a competitive harm if disclosed. |
| THS-55 | 1801-55 | Summary Judgment | This redaction request is denied. TreeHouse has provided its redactions in a manner that makes it impossible to assess what material TreeHouse seeks to redact or why these redactions would be appropriate. Thus, I cannot make the kind of specific on the record findings necessary to permit sealing. |
| THS-56 | 1801-56 | Summary Judgment | These redactions cover information substantially similar to the information in 1801-36 and 1801-54, and the redaction requests are denied for substantially the same reasons. |
| THS-57 | 1801-57 | Summary Judgment | These redactions cover information substantially similar to the information about Unilever in 1801-54 and are denied for substantially the same reasons. |
| THS-58 | 1801-58 | Summary Judgment | This redaction request is denied because the redactions appear to be information on proposed 2016 prices specific to a particular bid that are not likely to work a broader competitive harm on TreeHouse. |
| THS-59 | 1801-59 | Summary Judgment | These redactions cover information substantially similar to the information in 1801-54 and are denied for substantially the same reasons. |
| THS-60 | 1801-60 | *Daubert* | This redaction request is denied because the redactions related exclusively to a specific 2015-2016 bid the disclosure of which is unlikely to work a broader competitive harm. |
| THS-61 | 1801-61 | Summary Judgment | These redactions cover information substantially similar to the information in |

| | | | 1801-36 and 1801-54 and are denied for substantially the same reasons. |
|---|---|---|---|
| THS-62 | 1801-62 | Summary Judgment | These redactions cover information substantially similar to the information in 1801-54 and are denied for substantially the same reasons. |
| THS-63 | 1801-63 | Summary Judgment | These redactions cover information substantially similar to the information in 1801-36 and are denied for substantially the same reasons. |
| THS-64 | 1801-64 | *Daubert* | These redactions cover the same information as in Doc. 1801-47 and are denied for substantially the same reasons. |
| THS-65 | 1801-65 | Summary Judgment | This redaction request is denied because the redactions are speculation about competitor prices rather than actual competitive information, and already recognized losses or specific bid information from 2017 unlikely to work a broader competitive harm on TreeHouse. Where TreeHouse prices are discussed, it is in general terms unlikely to work a broader competitive harm. |
| THS-66 | 1801-66 | Summary Judgment | This redaction request is granted because the redaction includes specific TreeHouse bid prices from 2017. |
| THS-67 | 1801-67 | *Daubert* | This redaction request is denied because the information is from 2014 and TreeHouse does not explain why this information is not stale. |
| THS-68 | 1801-68 | *Daubert* | These redactions cover information substantially similar to the information in 1801-36 and 1801-54. They are denied for substantially the same reasons. |
| THS-69 | 1801-69 | *Daubert* | These redactions cover information substantially similar to the information in 1801-36 and 1801-54 and are denied for substantially the same reasons. |

### 3.  Personal Information of Current and Former Employees

TreeHouse requests to redact personal information of current and former employees such as personal cell phone numbers, as well as addresses of non-party customers.  This personal information is identified in proposed redactions in the documents, located at Docs. 1801-70

through 1801-95, and summarized in Doc. 1799-3.  These redactions are granted.  I have already

permitted similar redaction requests by McClane.  *See* Section II.C.3 *infra*.  That analysis applies

with equal force to these redactions.

### G.   *The Keurig Rule 72 Objection Opposition (Doc. 1822)*

TreeHouse requests to redact certain information associated with their opposition to

Keurig's objections under Fed. R. Civ. 72 to Magistrate Judge Sarah L. Cave's April 11, 2022,

Order.  (Doc. 1822.)  That order resolved reciprocal motions for spoliation sanctions precluding

evidence and awarding fees that Keurig and Plaintiffs filed against each other based on the

failure to preserve various materials for discovery.  (Doc. 1806, at 5–6.)

I do not find that a First Amendment right of access attaches to these documents.  As

*Brown* notes, although "a court's authority to oversee discovery and control the evidence

introduced at trial surely constitutes an exercise of judicial power . . . this authority is ancillary to

the court's core role in adjudicating a case."  929 F.3d at 50.  Thus, while documents submitted

to aid the court in the exercise of this authority are judicial documents to which the common law

right attaches, "the presumption of public access in filings submitted in connection with

discovery disputes or motions *in limine* is generally somewhat lower than the presumption

applied to material introduced at trial, or in connection with dispositive motions such as motions

for dismissal or summary judgment."  *Id.*  For requests to seal such discovery-oriented papers, "a

court must still articulate specific and substantial reasons for sealing" but "the reasons usually

need not be as compelling as those required to seal summary judgment filings."  *Id.*

Even under this more modest standard, I find that TreeHouse has not met the necessary

burden to permit the redactions it requests.  The only justification it offers for sealing in its one-

page letter is that the information it wishes to seal has been designated as "Highly Confidential"

under the Protective Order.  It does not indicate what harm would accrue if this information was

disclosed.  As noted, the fact that material is covered by the Protective Order does not justify

sealing.

### H. *The Unilever Materials (Doc. 1788)*

Non-party Unilever United States, Inc. ("Unilever") requests to seal all of the deposition

transcript of its Rule 30(b)(6) witness, Theodore Narozny, as well as the Expert Report of David

S. Sibley, Ph.D.  (Doc. 1788.)  These materials were filed as part of summary judgment and

*Daubert* motions and are therefore covered by the First Amendment right of access.  Unilever

does not provide the kind of specific, particularized information necessary to justify sealing

under the stringent First Amendment test nor does it explain with any particularity what harms

would accrue to it if these materials were disclosed.  In the absence of such information, I cannot

make the findings necessary to justify sealing, particularly since Unilever seeks to seal an entire

deposition and expert report rather than to redact narrow portions of these materials.

### I. *The Community Coffee Company Materials (Doc. 1759)*

Non-party Community Coffee Company, L.L.C., ("CCC") requests to seal certain

materials submitted in connection with summary judgment and *Daubert* motions.  (Doc. 1759.)

The First Amendment presumption of access attaches to the summary judgment and *Daubert*

motion materials CCC wishes to seal.  CCC does not explain why the various materials it wishes

to seal should not be public beyond generically asserting third party privacy rights and

unspecified commercial harms.  Indeed, it does not even explain precisely what information it

wishes to seal or redact in various documents.  Without this information, I cannot make the

specific, on-the-record, document-by-document findings necessary to meet the First Amendment

test for sealing.

### III.   <u>Subsequent Proceedings</u>

Having addressed this first tranche of documents, I now turn to the procedure for implementing this Opinion & Order and for proceedings in the rest of this case.  There are still 25 sealing motions outstanding, some of which propose additional redactions to documents covered in this Opinion & Order.  Filing these documents based on only the redactions covered in this Opinion & Order would be premature and might lead to the disclosure of information that is properly sealed.  Accordingly, all parties who have a motion to seal materials either addressed by this Opinion & Order or pending before me shall meet-and-confer and submit a joint letter setting out a proposed plan for reconciling the redactions directed by this and future orders and getting properly redacted materials filed on the public docket.

This joint letter shall also indicate if parties and non-parties with sealing motions believe that expediting the sealing and reconciliation process through mechanisms such as the appointment of a special master to review sealing requests and make recommendations to the court would be beneficial to the resolution of this action.  If the parties have recommendations for such a mechanism, they may describe it in this letter.

The parties are understandably eager to move the adjudication of this dispute forward with decisions on their substantive motions.  Progress towards that goal will inevitably be slowed if Judge Cave and I are engaged in the kind of line-by-line reviews of thousands of pages of redaction requests required given our obligation to safeguard the public's common law and First Amendment rights of access to court materials.  Therefore, I request the parties use this Opinion & Order as guidance for their future applications to seal or redact documents.

Finally, if any party believes that a sealing request that they have made is mooted or no longer merited given the guidance and determinations in this Opinion & Order, they should raise

48

that information as part of this letter.  This letter shall be submitted by February 16, 2023.

Judge Cave and I will continue to move the adjudication of this case forward as expeditiously as possible.  I expect to address the remaining sealing requests based on the information I receive in the letter I receive from the parties on February 16, 2023.  I also plan to resolve two pending objections made under Fed. R. Civ. P. 72, and the class certification request as soon as practicable.  Following the resolution of these motions, I will address the parties' *Daubert* motions, which will be useful when I the pending motions for summary judgment.

### IV.   Conclusion

Materials in this matter are to be sealed or redacted in compliance with the terms of this Opinion & Order.  The parties shall submit the joint status letter directed by this Opinion & Order by February 16, 2023.

The Clerk of Court is respectfully directed to terminate the motions at Docs. 1405, 1411, 1416, 1746, 1755, 1759, 1765, 1774, 1788, 1789, 1799, and 1822.

SO ORDERED.

Dated: January 17, 2023
New York, New York

Vernon S. Broderick
United States District Judge